## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| CARLOS BAIXERAS LLANO, as Personal Representative and Special Administrator of the Estate of MARIA DEL PINO DIAZ MENDOZA, deceased, MERCEDES FERREIRA, as Personal Representative and Special Administrator of the Estate of PILAR GONZALEZ FERREIRA, deceased, MARGARITA SUREDA HERNANDEZ, as Personal Representative and Special Administrator of the Estate of ANTONIO GARCIA LUNA, deceased, ESTRELLA TORAL LARA, as Personal Representative and Special Administrator of the Estate of FRANCISCO JAVIER MULET PUJOL, deceased, TRINIDAD PEREZ DE OBANOS LISO, as Personal Representative and Special Administrator of the Estado of JOSE JOAQUIN PEREZ DE OBANOS LISO, deceased, MAGALI BATON, as Personal Representative and Special Administrator of the Estate of ETHAN CHARILAS, deceased, PATRICK CHARILAS as Personal Representative and Special Administrator of the Estate of PIERRICK JACQUES CHARILAS, deceased, and PEDRO ANGEL GONZALEZ DIAZ, survivor. | Civil Action No. 2010L009481 CALENDAR/ROOM X TIME 00:00 Product Liability |

Civil Action No. 2010L009481
CALENDAR/ROOM X
TIME 00:00
Product Liability

**JURY TRIAL DEMANDED**

Plaintiffs,

v.

The Boeing Company,

Defendant.

## COMPLAINT AT LAW

Now come the plaintiffs, and each of them, by and through their undersigned counsel, and complaining against Defendant, state as follows:

1.   This action seeks damages for the injuries and wrongful deaths resulting from the August 20, 2008, aircraft accident that occurred when Spanair Flight JK5022, McDonnell

Douglas DC-9-82 ("MD 82") identified by Tail Number EC-HFP, crashed upon takeoff from Madrid Barajas International Airport in Madrid, Spain.

## THE PARTIES

**The Representative Plaintiffs**

2.     Plaintiff, Carlos Baixeras Llano, who was born on July 6, 1966, is a resident of and citizen of Spain, and was appointed to represent and administer the estate and interests of his wife, Maria Del Pino Diaz Mendoza, pursuant to the Circuit Court of Cook County, Illinois. Maria Del Pino Diaz Mendoza was born on September 8, 1967 and died in the crash of Spanair Flight J5022. Decedent was married. She was a resident and citizen of Spain at the time of her death. Plaintiff, Carlos Baixeras Llano, brings this action for the decedent's wrongful death in a representative capacity on behalf of all potential survivors and/or beneficiaries, including the following: (a) the Estate of Maria Del Pino Diaz Mendoza; (b) himself as husband of the decent; (c) any other individual entitled to recover under applicable law.

3.     Plaintiff, Mercedes Ferreira, who was born on December 19, 1950, is a resident of and citizen of Spain, and was appointed to represent and administer the estate and interests of her daughter, Pilar Gonzalez Ferreira, pursuant to the Circuit Court of Cook County, Illinois. Pilar Gonzalez Ferreira was born on December 24, 1971, and died in the crash of Spanair Flight J5022. Decedent was single. She was a citizen of France and a resident of Spain at the time of her death. Plaintiff, Mercedes Ferreira, brings this action for the decedent's wrongful death in a representative capacity on behalf of all potential survivors and/or beneficiaries, including the following: (a) the Estate of Pilar Gonzalez Ferreira; (b) herself as the mother of the decent; (c) Angelique Gonzalez Ferreira, as the sister of the decedent; (d) any other individual entitled to recover under applicable law.

- 2 -

4.      Plaintiff, Margarita Sureda Hernandez, who was born on April 28, 1968, is a resident of and citizen of Spain, and was appointed to represent and administer the estate and interests of her husband, Antonio Garcia Luna, pursuant to the Circuit Court of Cook County, Illinois. Antonio Garcia Luna was born on July 24, 1969, and died in the crash of Spanair Flight J5022. Decedent was married. He was a resident and citizen of Spain at the time of his death. Plaintiff Margarita Sureda Hernandez brings this action for the decedent's wrongful death in a representative capacity on behalf of all potential survivors and/or beneficiaries, including the following: (a) the Estate of Antonio Garcia Luna; (b) herself as wife of the decent; (c) Maria Garcia Sureda as daughter of the decedent; (d) Isabel Garcia Sureda, as daughter of the decedent; (e) Lucia Garcia Sureda as daughter of the decedent; (f) any other individual entitled to recover under applicable law.

5.      Plaintiff, Estrella Toral Lara, who was born on May 24, 1976, is a resident of and citizen of Spain, and was appointed to represent and administer the estate and interests of her common law husband, Francisco Javier Mulet Pujol, pursuant to the Circuit Court of Cook County, Illinois. Francisco Javier Mulet Pujol was born on June 29, 1977 and died in the crash of Spanair Flight J5022. Decedent was considered married pursuant to Spanish common law. He was a resident and citizen of Spain at the time of his death. Plaintiff Estrella Toral Lara brings this action for the decedent's wrongful death in a representative capacity on behalf of all potential survivors and/or beneficiaries, including the following: (a) the Estate of Francisco Javier Mulet Pujol; (b) herself as the common-law wife of the decent; (c) Francisco Mulet Sans, as father of the decedent; (d) Francisca Pujol Villalonga, as mother of the decedent; (e) any other individual entitled to recover under applicable law.

6.     Plaintiff, Trinidad Perez De Obanos Liso, who was born October 2, 1950, is a resident of and citizen of Spain, and was appointed to represent and administer the estate and interests of her brother, Jose Joaquin Perez De Obanos Liso, pursuant to the Circuit Court of Cook County, Illinois. Jose Joaquin Perez De Obanos Liso was born on February 16, 1947, and died in the crash of Spanair Flight J5022. Decedent was single. He was a resident and citizen of Spain at the time of his death. Plaintiff, Trinidad Perez De Obanos Liso, brings this action for the decedent's wrongful death in a representative capacity on behalf of all potential survivors and/or beneficiaries, including the following: (a) the Estate of Jose Joaquin Perez De Obanos Liso; (b) herself as sister of the decent; (c) Maria Angeles Manuela Perez de Obanos Liso as sister of the decedent; (d) Maria Pilar Perez de Obanos Liso as sister of the decedent; (e) Maria del Carmen Perez de Obanos Liso as sister of the decedent; (f) any other individual entitled to recover under applicable law.

7.     Plaintiff, Magali Baton, who was born March 12, 1971, is a resident of and citizen of France, and was appointed to represent and administer the estate and interests of her son, Ethan Charilas, pursuant to the Circuit Court of Cook County, Illinois. Ethan Charilas was born on October 13, 2004, and died in the crash of Spanair Flight J5022. Decedent was single. He was a resident and citizen of France at the time of his death. Plaintiff Magali Baton brings this action for the decedent's wrongful death in a representative capacity on behalf of all potential survivors and/or beneficiaries, including the following: (a) the Estate of Ethan Charilas; (b) herself as mother of the decent; (c) any other individual entitled to recover under applicable law.

8.     Plaintiff, Patrick Charilas, who was born on July 21, 1952, is a resident of and citizen of France, and was appointed to represent and administer the estate and interests of his son, Pierrick Jacques Charilas, pursuant to the Circuit Court of Cook County, Illinois. Pierrick

- 4 -

Jacques Charilas was born on August 11, 1976, and died in the crash of Spanair Flight J5022. Decedent was single. He was a resident and citizen of France at the time of his death. Plaintiff Patrick Charilas, brings this action for the decedent's wrongful death in a representative capacity on behalf of all potential survivors and/or beneficiaries, including the following: (a) the Estate of Pierrick Charilas; (b) himself as father of the decent; (c) Claude Martine Charilas as mother of the decedent; (d) Stephan Florian Roger Charilas as brother of the decedent; (e) any other individual entitled to recover under applicable law.

9.     All Representative Plaintiffs named herein are acting as Personal Representatives of Decedents' Estates and bring this action for all of their respective decedents' wrongful deaths in a representative capacity on behalf of all potential survivors and their beneficiaries, including all decedents' estates, and all other individuals entitled to recover under applicable law.

**The Surviving Plaintiff**

10.     Pedro Angel Gonzalez Diaz was a passenger on Spanair Flight J5022. At all relevant times, he has been a resident and citizen of Spain. As a direct and proximate result of the crash of Spanair Flight J5022 was severely injured and has sustained damages.

**The Defendant**

11.     At all relevant times, Defendant, The Boeing Company, was and continues to be a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Cook County, Illinois. The Boeing Company's home office address is 100 N. Riverside, MC 5003-4551, Chicago, Illinois 60606. At all relevant times, Boeing conducted substantial business in this State and in this County.

12.     The aircraft that crashed at Madrid's Barajas International Airport on August 20, 2008, was manufactured by the McDonnell Douglas Corporation on November 1, 1993, and given the following Serial Number: 53148.

13.     From July 1998 until the time of the crash the aircraft was operated by Spanair.

14.     On August 1, 1997, Defendant Boeing acquired McDonnell Douglas, thereby acquiring all of McDonnell Douglas' assets and liabilities, including the tort liabilities (personal injury and wrongful death) for claims arising out of the design and manufacture of certain McDonnell Douglas' products, including the DC-9-82 (MD-82) model aircraft at issue in this case.

15.     As such, at all times material, McDonnell Douglas and Boeing designed, manufactured, tested, inspected, marketed, distributed, sold, installed, modified, serviced, maintained, repaired, updated, prepared service and operations manuals for, and/or otherwise placed into the stream of commerce the subject aircraft, including but not limited to the TakeOff Warning System ("TOWS") and all other components and/or associated parts installed on the subject aircraft.

16.     At all material times McDonnell Douglas and Boeing designed, catalogued, updated and distributed (or had the ability to distribute) operational checklists, operations manuals, maintenance manuals and updates, necessary systems manuals, repair manuals, system schematics and the like to pilots, mechanics and the aviation industry as a whole.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action under 735 ILCS 5/2-209 of the Illinois Code of Civil Procedure.  Defendant is an Illinois corporation, resident, and/or has otherwise submitted to the jurisdiction of this Court by transacting business in Illinois.

18.     Venue is proper in this Court under 735 ILCS 5/2-101 because Defendant's home offices are located in this judicial district.

19.     Plaintiffs choose Illinois as their forum of choice and are all willing to travel, when necessary, to the State of Illinois and this Court.

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

20.     On August 20, 2008, Spanair Flight JK5022 was on its way to Las Palmas, Gran Canarias (The Canary Islands), a province in Spain.  There were 172 persons on board, including 6 active crew members, 4 non-active Spanair employees and 162 passengers.

21.     The decedents and surviving Plaintiff were fare-paying passengers pursuant to a contract for carriage aboard Spanair Flight JK5022.

22.     At approximately 14:24 hours (2:24 p.m.), in fair weather on August 20, 2008, Spanair Flight JK5022 crashed upon takeoff form Madrid Barajas International Airport in Madrid, Spain.

23.     More specifically, as the flight crew initiated the takeoff roll, the aircraft rose approximately 10 meters while it began to roll before violently plunging to the ground, hitting tail first, out of control, and careening to its right at about a 30 degree angle from the active runway.  As the aircraft began to disintegrate, it continued into a wooded creek area where it exploded into an enormous fireball.

24.     As a result of the crash, one hundred and fifty four persons (154) lost their lives on August 20, 2008, including the six active crew members, four non-active crew-members and one hundred and forty four (144) passengers.  There were eighteen (18) survivors; however all of them were critically injured.

25.    This crash occurred because the aircraft's takeoff warning system ("TOWS") failed to warn the flight crew that the aircraft was not in proper takeoff configuration. As a direct and proximate result of this defective and unreasonably dangerous condition of the subject aircraft, the pilots were unable to control the subject aircraft, resulting in the crash described above.

**Flaps, Slats and the TOWS**

26.    Among numerous parts and systems, the MD-82 aircraft was designed with four flaps and six slats on its wings, which are bussed together (connected to one electrically controlled switch) and operate as one coordinated unit on both wings' leading and trailing edges. Flaps are hinged surfaces on the back. Slats are hinged surfaces on the front. Both flaps and slats are deployed in order to assist in generating critical uplift for the aircraft during takeoff.

27.    Because flaps and slats are critical for take off, and therefore the overall safety of the aircraft, there are safety systems designed to warn the airplane's crew if these devices are not deployed or not working properly. On the MD-82 aircraft this system is called the Take Off Warning System ("TOWS"). This system provides various audible warnings to the flight crew should the flaps and/or slats malfunction, or if the aircraft is not in proper takeoff configuration when the takeoff roll is initiated. The sound of the no-configuration warning horn during the takeoff sequence is meant to alert the pilots that they must abort the takeoff and so avert a catastrophe. The TOWS is part of the Central Aural Warning System ("CAWS"), the overall safety warning system.

28.    The TOWS is programmed so that if the throttles are advanced on takeoff, the pilots are alerted if the flaps and/or slats have not been properly positioned. Should one or both

of these components be configured incorrectly, the synthetic voice will automatically announce the specific component after the horn is sounded.

**The Defective TOWS on Spanair Flight JK5022**

29.     According to the Interim Report of the CIAIAC (Ministerio de Fomento Comisión de Investigación de Accidentes e Incidentes de Aviación Civil), the agency investigating the crash of Spanair Flight JK5022, during the entire fatal takeoff attempt until the Cockpit Voice Recorder ("CVR") ceased recording of the subject crash, no noises were recorded involving the TOWS advising of an inadequate takeoff configuration. Neither the horn nor the synthetic voice alerted the pilots of an inadequate takeoff configuration that would cause the subject aircraft to stall and subsequently crash.

30.     At the time the aircraft left the custody and control of McDonnell Douglas and Boeing, it was defective and unreasonably dangerous in that the aircraft could attempt takeoff with an improper flaps/slats configuration without an audible alert from the TOWS system and without warning that the TOWS system was malfunctioning. That defective and unreasonably dangerous condition proximately caused the subject aircraft to stall and crash.

31.     If Defendant had properly designed, manufactured, modified, repaired, maintained, supported, inspected and/or tested the subject aircraft and/or the TOWS and all component and/or associated parts installed on the subject aircraft, and/or provided adequate training, warning, information, manuals, checklists, updates and the like regarding the design defects of the subject aircraft and/or the TOWS installed on the subject aircraft, the subject aircraft and/or TOWS would have been operational and the subject accident would have been avoided.

32.     Defendant had previous knowledge and notice, and was aware of specific defects relating to the MD-82 series aircraft, including the MD-82 flown on Spanair Flight JK5022. With this knowledge and notice, the Defendant knew or should have known that a great risk for death and injury existed every time this aircraft took off.

33.     As a direct and proximate result of Defendant's negligence and other misconduct as hereinafter alleged, Spanair Flight JK5022 crashed on August 20, 2008, because the TOWS failed to warn the flight crew that the aircraft was not in proper takeoff configuration.

34.     As a result of Defendant's acts and/or omissions, the Plaintiffs were injured. Defendant is liable to Plaintiffs for all damages to which the Estate of the decedent, the survivors and/or beneficiaries are entitled as applicable law may provide.

**Previous Similar Occurrences**

35.     In 1987 and 1988,[1] two U.S. crashes that claimed 170 lives were caused by the failing of the TOWS systems.

36.     Critically, in each case, Boeing and McDonnell Douglas were informed from the investigation results that the TOWS systems as installed on the planes were rendered inoperative without the pilots having reason to know that dangerous fact.

37.     For example, the NTSB (National Transport Safety Board) investigation of the crash of Northwest Airlines Flight 225, in Detroit, revealed that although the crew improperly set the flaps and slats, the TOWS system which would have alerted the crew to the improper settings was rendered inoperable when a circuit breaker which powered the TOWS either was intentionally opened by the crew or malfunctioned. The reason for that absence of the power was not determined.

---

[1] Northeast Airline flight 225 crashed in Detroit in 1987 and Delta flight 1141 crashed in Dallas/Fort Worth in 1988.

**Defendant's Operations Manual**

38.     From the time the subject aircraft was originally sold or delivered through the time of the crash, McDonnell Douglas and Boeing provided customer support for said aircraft, including operations manuals, alert service bulletins, service bulletins, maintenance manuals, minimum equipment lists, technical advisories, updates, aircraft parts, engineering as well as training for personnel and other like customer support services.

39.     During the September 1987 investigation of the accident in Detroit, McDonnell Douglas issued a telex to all DC-9-80 (the MD-80) operators, recommending that they modify their checklists to ensure that the TOWS was checked prior to each flight. However, Boeing did not include this recommendation in its Operation Manual.

40.     As Spanair acquired the MD-82 airplane on July 1998, Spanair never received the 1987 McDonnell Douglas and Boeing telex recommending the modification of the checklists to ensure the TOWS was checked prior to each flight.

41.     At the time of the accident in Madrid, Boeing's Operation Manual (FCOM) specified that the check of the TOWS should be done prior to "the first flight of the day" and "on through flights", although the meaning of that expression was not defined in the manual.

42.     In March 2009, following the Madrid cash, Boeing amended the Operation Manual for the first time to include the definition of these terms – despite being on notice of the problem prior to the instant crash on August 20, 2008. According to these definitions, "the first flight of the day" is the first flight made by a crew on an aircraft, even if they have flown together previously that same day. "Through flights" are defined as flights that make up a series of consecutives flights made by the same crew on the same aircraft. In other words, only after

the crash of Spanair Flight JK0522 did Boeing inform the airlines that the TOWS should be checked prior to each flight.

43.     Based on the initial data from the investigation of Spanair Flight JK0522 provided by the CIAIAC, the European Aviation Safety Agency issued Airworthiness Directive AD 2008-0197, on October 29, 2008. This directive amends the airplane flight manual for DC-9-10, DC-9-20. DC-9-30, DC-9-40 y DC-9-50, DC-9-81 (MD-81), DC-9-82 (MD-82), DC-9-83 (MD-83) and DC-9-87 (MD-87); MD-88; MD-90-30 and 717-200 by including a mandatory check of the TOWS before engine start-up on each flight. It is applicable to every operator of these aircraft in the European Union.

44.     On November 5, 2008, the FAA issued Safety Alert for Operators ("SAFO") 08021. This SAFO made reference to the 1987 McDonnell Douglas telex recommending that the TOWS be checked prior to each flight. The SAFO emphasizes that the risks of improperly configuring the slats and flaps can be mitigated by adhering to TOWS.

45.     If Boeing's Operation Manual had specified that the TOWS should be checked and operational prior to each flight, the subject accident would have been avoided.

## COUNT I
## NEGLIGENCE

46.     Plaintiffs incorporate by reference as if fully set forth herein all allegations and facts previously recited herein for all purposes.

47.     It was Defendant's duty to exercise reasonable care under the circumstances in all aspects consistent with assuring the safety and welfare of the passengers utilizing the aircraft in question for its intended use.

48.     Defendant was negligent in that it breached its duty of care owed to the Decedents, the injured, and the aggrieved families who lost loved ones, by committing one or more of the following acts and/or omissions:

      a.    negligently designing, manufacturing, testing, inspecting, marketing, selling, installing, supporting, modifying, servicing and/or maintaining the subject aircraft, including but not limited to directives and operational instructions, and the TOWS and all component and/or associated parts thereto installed on the subject aircraft;

      b.    failing to warn or remedy the defects associated with the subject aircraft and/or the TOWS and all component and/or associated parts thereto installed on the subject aircraft and by failing to advise operations of its aircraft of the dangers and flaws inherent in the TOWS; and/or

      c.    failing to provide adequate training and instructions for the safe and proper use and/or maintenance of the subject aircraft and/or the TOWS and all component and/or associated parts thereto installed on the subject aircraft.

49.     As direct and proximate result of the above-described negligent acts and omissions of Defendant, which contributed to and proximately caused the subject crash and the consequent deaths and injuries, Representative Plaintiffs have been damaged and claim all damages to which the Estates, the survivors and/or beneficiaries may be entitled under applicable law.

50.     As direct and proximate result of the above-described negligent acts and omissions of Defendant, which proximately caused the subject crash, Plaintiff, Pedro Angel Gonzalez Diaz suffered severe injuries and damages.

WHEREFORE, Plaintiffs sue Boeing for compensatory damages, costs and such other relief as this Court deems appropriate.

**COUNT II**
**STRICT PRODUCT LIABILITY**

51.     Plaintiffs incorporate by reference as if fully set forth herein all allegations and facts previously recited herein for all purposes.

52.     Defendant designed, manufactured, modified, tested, inspected, marketed, packaged, sold, installed, serviced, supported, repaired and/or maintained the subject aircraft and/or the TOWS and all relevant component and/or associated parts installed on the subject aircraft, and prepared, revised, and/or updated all notices, information, manuals, equipment lists, instructions, warnings and/or procedures regarding the operation, maintenance, and limitations of the subject aircraft and/or the TOWS installed on the subject aircraft.

53.     The subject aircraft and/or the TOWS and all component and/or associated parts installed on the subject aircraft were being used on August 20, 2008, in substantially the same condition as it was when sold and/or delivered to its intended user.

54.     On and prior to August 20, 2008, the subject aircraft and its component parts, including but not limited to the TOWS and all component and/or associated parts installed on the subject aircraft, manuals, instructions, and warnings, were defective, unreasonably dangerous, unsafe and unfit for their intended use, and incompatible with reasonable expectations for the performance of said product, and said defects could and did cause the crash which occurred on August 20, 2008.

55.     Due to the nature and extent of the defective design, manufacture, marketing, sale, distribution and ultimately placing the aircraft in question into the stream of commerce in an unreasonably dangerous and unfit condition, Defendant is subject to strict liability in tort..

56.     As a direct and proximate result of the defective design, manufacture, marketing, sale, distribution, warning, instruction and the unreasonably dangerous condition, said aircraft

- 14 -

was caused to and did crash during takeoff from Madrid Barajas International Airport in Madrid, Spain on August 20, 2008, causing the death of the decedents and injuries of the survivors.

57.     As direct and proximate result of the above-described acts and omissions of Defendant, Representative Plaintiffs have been damaged and claim all damages to which the Estate, the survivors and/or beneficiaries may be entitled under applicable law.

58.     As direct and proximate result of the above-described acts and omissions of Defendant, Plaintiff, Pedro Angel Gonzalez Diaz, suffered severe injuries and has been damaged and claims all damages to which he may be entitled under applicable law.

WHEREFORE, Plaintiffs sue Boeing for compensatory damages, costs and such other relief as this Court deems appropriate.

## COUNT III
## BREACH OF WARRANTY

59.     Plaintiffs incorporate by reference as if fully set forth herein all allegations and facts previously recited herein for all purposes.

60.     Prior to August 20, 2008, Defendant expressly and/or impliedly warranted and represented that the subject aircraft, including its instructions and warnings, war airworthy and of merchantable quality, fit and safe for the purpose for which it was designed, manufactured, assembled, inspected, tested, sold, serviced, repaired, maintained, intended and used, and Defendant further warranted that the subject aircraft was free from defects.

61.     At the time said aircraft was delivered through August 20, 2008, Defendants breached said warranties in that the subject aircraft was not airworthy, of merchantable quality, fit and safe for the purpose for which it was designed, manufactured, assembled, inspected, tested, sold, serviced, repaired, maintained, intended and used, and further was not free from defects.

62.     Pedro Angel Gonzalez Diaz and Representative Plaintiffs' decedents were being transported on said aircraft for hire and trusted that the subject aircraft was working and being operated as warranted and, therefore, Pedro Angel Gonzalez Diaz and said decedents were beneficiary of the warranties extended by Defendant.

63.     As a direct and proximate result of the foregoing breach of warranties, the subject aircraft was caused to and did crash, causing Pedro Angel Gonzalez Diaz and Representative Plaintiff's decedents to be injured or killed.

WHEREFORE, Plaintiffs sue Boeing for compensatory damages, costs and such other relief as this Court deems appropriate.

## COUNT IV
## ILLINOIS WRONGFUL DEATH ACT (740 ILCS 180/1)

64.     Plaintiffs incorporate by reference as if fully set forth herein all allegations and facts previously recited herein for all purposes.

65.     It was Defendant's duty to exercise reasonable care under the circumstances in all aspects consistent with assuring the safety and welfare of the passengers utilizing the aircraft in question for its intended use.

66.     Defendant was negligent in that it breached its duty of care owed to the Decedents, the injured, and the aggrieved families who lost loved ones, by committing one or more of the following acts and/or omissions:

      a.    negligently designing, manufacturing, testing, inspecting, marketing, selling, installing, supporting, modifying, servicing and/or maintaining the subject aircraft, including but not limited to directives and operational instructions, and the TOWS and all component and/or associated parts thereto installed on the subject aircraft;

      b.    failing to warn or remedy the defects associated with the subject aircraft and/or the TOWS and all component and/or associated parts thereto

installed on the subject aircraft and by failing to advise operations of its aircraft of the dangers and flaws inherent in the TOWS; and/or

c.     failing to provide adequate training and instructions for the safe and proper use and/or maintenance of the subject aircraft and/or the TOWS and all component and/or associated parts thereto installed on the subject aircraft.

67.     At the times of their respective deaths, Representative Plaintiffs' decedents, and each of them, left surviving certain next of kin, heirs and/or successors in interest to their estates for whose benefit this action is being brought.

68.     As a result of the aforesaid conduct, the next of kin, heirs and/or successors in interest to the estates of the Representative Plaintiffs' decedents, and each of them, have sustained substantial pecuniary damages including but not limited to loss of society and companionship, loss of economic support and loss of support and services.

69.     The respective special administrators for the estates of Representative Plaintiffs' decedents, and each of them, are duly appointed pursuant to order of the Circuit Court of Cook County, Illinois.

70.     This action is being brought pursuant to 740 ILCS 180/1, *et seq.*, commonly known as the Illinois Wrongful Death Act and/or other applicable laws.

WHEREFORE, Plaintiffs sue Boeing for compensatory damages, costs and such other relief as this Court deems appropriate.

## COUNT V
## SURVIVAL ACTION (755 ILCS 5/27-6)

71.     Plaintiffs incorporate by reference as if fully set forth herein all allegations and facts previously recited herein for all purposes.

72.     Had Representative Plaintiffs' decedents survived, each of them would have had the right to bring an action for damages arising from the physical, mental and emotional injuries sustained by them prior to their deaths, and such action has survived them.

73.     The respective representatives and/or special administrators for the estates of Representative Plaintiffs' decedents, and each of them, are duly appointed pursuant to order of the Circuit Court of Cook County, Illinois.

74.     This cause of action for the personal injuries suffered by decedents is brought pursuant to 755 ILCS 5/27/1, *et seq.*, commonly known as the Illinois Survival Act and/or other applicable laws.

WHEREFORE, Plaintiffs sue Boeing for compensatory damages, costs and such other relief as this Court deems appropriate.

## GENERAL PRAYER FOR RELIEF

WHEREFORE, Plaintiffs hereby pray for judgment against Defendant in a sum in excess of $50,000 and which amounts may be sufficient to fairly and reasonably compensate all Plaintiffs, the estates of the decedent victims, their beneficiaries and/or survivors, for their respective damages as applicable law may provide; including, but not limited to:

As to Pedro Angel Gonzalez Diaz:

       a.     An amount adequate to compensate for his actual damages as a jury might reasonably award; including, but not limited to: past and future cost of medical care, hospitalization and treatment, pain and suffering, disability, disfigurement, mental anguish, emotional distress, loss of capacity for the enjoyment of life, and lost wages; and/or

       b.     pre and post judgment, costs, and such other relief, at law and in equity, to which the he may be justly entitled to receive.

As to the Representative Plaintiffs:

       a.     pain and suffering of decedent prior to death;

- 18 -

b.  pain and suffering of Plaintiffs, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

c.  lost society, consortium, companionship, comfort, instruction, guidance, counsel, training, and services of the decedent to Plaintiffs, survivors, beneficiaries and/or heirs;

d.  pecuniary losses including loss of support in money or in kind;

e.  loss of inheritance and/or net accumulations;

f.  lost value of life;

g.  funeral expenses;

h.  any and all other damages to which the decedent, the Plaintiffs, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled under applicable law; and/or

i.  pre and post judgment, costs, and such other relief, at law and in equity, to which the Plaintiffs may be justly entitled to receive.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Dated: August 18, 2010

Respectfully submitted,

By: _____

Edward A. Wallace
Mark R. Miller
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: 312-346-2222
Facsimile: 312-346-0022
eaw@wexlerwallace.com
mrm@wexlerwallace.com
Attorney No. 37591

Andrew T. Trailor
ANDREW T. TRAILOR, P.A.
8603 South Dixie Highway, Suite 303

- 19 -

Miami, Florida 33143
Telephone: (305) 668-6090
Facsimile: (305) 668-6225

***Attorneys for Plaintiff***